IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONDA J. MERRILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-1045-JPG-CJP |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

### MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Ronda J. Merrill, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Ms. Merrill applied for benefits in November 2012, alleging disability beginning on October 1, 2012. After holding an evidentiary hearing, ALJ Victoria A. Ferrer issued a partially favorable decision on September 17, 2014. ALJ Ferrer denied the application for the period from October 1, 2012, to January 7, 2014, but found that plaintiff became disabled as of January 8, 2014. (Tr. 12-26). The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017).   She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

Plaintiff filed a Motion for Summary Judgment at Doc. 18. Her memorandum in support is located at Doc. 23, Ex. 1.

## Issues Raised by Plaintiff

Plaintiff raises the following issues

1. The ALJ erred in evaluating plaintiff's residual functional capacity (RFC) in that:

    (a) she failed to account for all of plaintiff's mental limitations;
    (b) she erroneously determined that plaintiff's fibromyalgia was not a medically determinable impairment;
    (c) she failed to give appropriate weight to the opinion of plaintiff's counselor, Kayla Schumacher; and
    (d) she erred in her consideration of plaintiff's COPD.

2. The credibility analysis was erroneous.

An additional argument was set forth under Section D on page 22 of plaintiff's memorandum. She withdrew that argument in her reply brief, Doc. 34, p. 4.

## Applicable Legal Standards

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).[2]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Merrill was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384,

1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Ferrer followed the five-step analytical framework described above. She determined that Ms. Merrill had not worked at the level of substantial gainful activity since her alleged onset date, and that she was insured for DIB through December 31, 2015.

The ALJ found that plaintiff had severe impairments of depression, COPD, generalized anxiety disorder, cervical spondylosis and degenerative disc disease, obesity, and headaches, and that these impairments do not meet or equal a listed impairment. She also determined that, while the record contained a diagnosis of fibromyalgia, the record did not contain information sufficient to establish that fibromyalgia was a medically determinable impairment.

For the period up to January 7, 2014, the ALJ concluded that Ms. Merrill had the residual functional capacity (RFC) to do work at the light exertional level with some physical and mental limitations.[3] Physically, she was limited to standing/walking for 2 out of 8 hours, sitting for 6 out of 8 hours, occasional climbing of ramps, and stairs; occasional balancing, stooping, kneeling, crouching and crawling, and never climbing ladders, ropes or scaffolds. She should avoid even moderate exposure to extreme heat, humidity and pulmonary irritants, and she needed to be in a quiet noise environment or to wear ear protection. Mentally, she was limited to doing simple, routine, repetitive tasks, following simple instructions, and making simple work decisions. She was unable to meet fast-paced high production demands such as on an assembly line.

---

[3] Light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §404.1567(b).

From January 8, 2014, to the date of the decision, plaintiff required the use of a portable oxygen unit on a continual basis.

Based upon the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work.  However, she was not disabled through January 7, 2014, because she was able to do other jobs that exist in significant numbers in the regional and national economies, i.e., order clerk and cashier.  However, she was unable to do any work once she needed to be on oxygen.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

**1.      Agency Forms**

Plaintiff was born in 1965 and was 47 years old on the alleged date of onset.   (Tr. 229). She had mostly done factory work in the past.   (Tr. 244).

In a Function Report submitted in January 2013, plaintiff said that she had "massive headaches," loss of balance, numbness in the face and left chest, memory loss, neck and back pain, and muscle weakness.   She said she was unable to sit, stand or walk for very long, and that she had to lie down often during the day.   (Tr. 255).

**2.      Evidentiary Hearing**

Ms. Merrill was represented by an attorney at the evidentiary hearing on August 4, 2014. (Tr. 33).   Plaintiff testified that she last worked as a machine operator at the Peerless factory in Effingham, Illinois.   She left that job in October 2012 because the company downsized.   She was

off work with a headache for a week, and then was let go. (Tr. 39-40). She had been on oxygen 24 hours a day since January 2014. This was prescribed by her primary care physician, Dr. Altwal. (Tr. 43-44).

Plaintiff's testimony about her mental and physical condition is of limited relevance because her testimony was directed to the time of the hearing and not to the period prior to January 8, 2014.

A vocational expert also testified. The ALJ asked him a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that the requirements of a quiet area and no fast-paced production demands would, in effect, limit plaintiff to sedentary jobs. She could not do her past work, but could do other jobs such as food and beverage order clerk and sedentary cashier. (Tr. 69-71). She would not be employable if she were on oxygen 24 hours a day. (Tr. 75).

### 3. Medical Records

In October 2012, Dr. Arora was plaintiff's primary care physician. She saw him on October 2, 2012, for swelling in her left facial area and headache. (Tr. 325). A cervical MRI showed some spondylosis, mild central canal stenosis at C5-6, and minimal posterior disc bulge at C4-5 and C6-7. (Tr. 317).

Plaintiff saw Dr. Leventhal, an orthopedist, on a referral from Dr. Arora. On exam, her cervical range of motion was limited and her pupils were unequal. He characterized the results of the cervical MRI as mild degenerative changes with some disc bulges and some mild neuroforaminal narrowing. He recommended that she have an MRI of the brain and be evaluated by a neurologist. (Tr. 331-348).

Dr. Kosierkiewicz, a neurologist, saw plaintiff in October 2012. She complained of headache and blurred vision. He noted that she was unable to work due to headaches. On exam, he found diminished sensation to light touch and pinprick over the left side of her face, increased knee jerk on the left, and diminished toe tap bilaterally. An MRI of the brain showed abnormalities, of uncertain etiology. He prescribed Fioricet for headache and ordered additional testing. (Tr. 395-397). In November 2012, he noted that MRI of the pituitary and orbits were normal, and there was no evidence of optic neuritis. Various lab tests, including Lyme titers, ANA, methylmalonic acid, sedimentation rate, C-reactive protein, TSH (thyroid function) and complete blood count were normal. Fioricet did not help her headaches, so he changed her to Topamax. (Tr. 398-399). On November 9, 2012, she continued to complain of severe headaches. He changed her medication to Neurontin. He recommended a spinal tap to rule out the possibility of multiple sclerosis, but this could not be done because she lost her insurance. (Tr. 400-401). The report of the lab tests ordered by Dr. Kosierkiewicz is at Tr. 402-405.

Plaintiff began seeing Dr. Altwal as her primary care physician in 2013. He saw her about once a month. She complained of headaches, facial numbness, loss of balance, neck and back pain, and psychiatric symptoms such as sadness and crying. In April 2013, he diagnosed depression and prescribed Cymbalta. She was to see a counselor at Heartland. In May 2013, he recommended that she see a psychiatrist. (Tr. 408-414).

On Dr. Atlwal's referral, plaintiff saw Dr. Khosrowshahi, a neurologist, in March 2013. Among her complaints were headaches, facial numbness, gait problems, and neck, back and muscle pain. Dr. Khosrowshahi noted that a prior neurologist had done "extensive blood work including ESR, CRP, ANA, ANCA, lipid panel, Vit D, Lyme serology, ACE level, Methylmalonic

Page **8** of **14**

acid, Homocysteine, SSA, SSB, DNAD and Folate." He reviewed her brain MRI and concluded that it was "unremarkable" and showed only minor changes that were not uncommon at her age. He also concluded that the cervical MRI was "unremarkable." On physical exam, he found tender spots in the bilateral trapezius muscles and posterior neck. He was aware that she had been unable to undergo a spinal tap because she lost her insurance, but said that he did not suspect multiple sclerosis. He concluded that she was likely suffering from depression and fibromyalgia. He recommended trying an antidepressant or referral to a psychiatrist, treatment of fibromyalgia pain, no narcotics, and physical therapy for her stiff neck and myalgias. (Tr. 568-571).

  **4.**  **State Agency Consultant's Mental RFC Assessment**

In September 2013, Thomas Low, Ph.D., assessed plaintiff's mental RFC using an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 111-112). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas.

Dr. Low answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated her as "moderately limited" in ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In the section for narrative remarks, Dr. Low wrote, "Claimant would have some lapses of concentration due to depression but can still follow simple directions. She experiences some depression but can perform simple tasks in a routine setting. Within these limits claimant can work."

## Analysis

The Court agrees that the ALJ erred in failing to account for all of plaintiff's mental limitations in her RFC assessment as well as in the hypothetical question posed to the VE.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. She made this finding at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment *per se*, her ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 17).

As described above, Dr. Low, a state agency consultant, rated plaintiff as moderately limited in ability to maintain attention and concentration for extended periods, and, in his narrative remarks, wrote that she would "have some lapses of concentration due to depression." The ALJ acknowledged that finding, but did not say whether she agreed or disagreed with it. (Tr. 22). Dr. Low also found that plaintiff was moderately limited in ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ did not discuss this second finding at all, or Dr. Low's narrative remark that plaintiff "would have some lapses of concentration due to depression." This was error in itself. The ALJ is not required to accept the opinion of a reviewing state agency consultant, but is required to consider it and explain the weight given to the opinion in her decision. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). And, the ALJ must acknowledge and address evidence that is contrary to her conclusions. *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014).

Despite Dr. Low's report and the ALJ's own finding at step three, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to simple, routine, repetitive tasks, simple instructions, and simple decisions, with no fast-paced production demands.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner defends the ALJ's decision by arguing that Dr. Low's narrative discussion on the Mental RFC Assessment Form support the ALJ's RFC assessment, and, by extension, the hypothetical question posed to the VE, despite the fact that he indicated in the first part of the form that plaintiff had a moderate limitation in maintaining attention and concentration. The Seventh Circuit has repeatedly held that a limitation to, in effect, unskilled work, does not suffice to account for a claimant's moderate limitation in maintaining concentration, persistence or pace. The Seventh Circuit has likewise held that limiting plaintiff to no fast-paced production requirements does not account for moderate difficulties in maintaining concentration, persistence or pace. See, *Varga*, 794 F.3d at 816 (collecting cases.). See also, *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016)(Noting "our rejection of the view that 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'") The Commissioner's argument in the present case presents no meaningful basis on which to distinguish the Seventh Circuit's precedents, which are binding on this Court.

The ALJ also erred in determining that plaintiff's alleged fibromyalgia was not a medically determinable impairment because she overlooked or misunderstood some of the medical evidence.

The ALJ purported to follow SSR 12-2p in assessing plaintiff's claim that she suffered from fibromyalgia. In order to be deemed a medically determinable impairment under SSR 12-2p, a diagnosis of fibromyalgia "must be supported by evidence meeting either of two sets of diagnostic criteria promulgated by the American College of Rheumatology, in 1990 and 2010." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016). The 1990 criteria require an analysis of tender points, while the 2010 criteria require "a history of widespread pain, repeated

manifestations of six or more fibromyalgia symptoms, signs, or contemporaneous conditions, and evidence that alternative explanations for those symptoms, signs, or contemporaneous conditions were ruled out." *Ibid.*

ALJ Ferrer referred to the two sets of criteria. With regard to the second set of criteria, she noted that other causes could be ruled out by testing, i.e., "blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." (Tr. 16). These tests are referenced in SSR 12-2p, 2012 WL 3104869, at *3. The ALJ explained her conclusion regarding plaintiff's fibromyalgia as follows: "In this case, there is no report of tender points and other causes have not been excluded." (Tr. 16).

The ALJ's conclusion that other causes have not been excluded is not supported by the record. Examples of other disorders that should be excluded are rheumatologic disorders, myofacial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders. SSR12-2p, 2012 WL 3104869, at *3, n. 7. Dr. Kosierkiewicz, the neurologist who saw plaintiff in October 2012, ordered the tests suggested by the 2010 criteria and referred to by the ALJ. Those tests were negative. (Tr. 398-399, 402-405). Dr. Khosrowshahi, the second neurologist, noted the prior testing and the negative results. Dr. Khosrowshahi diagnosed fibromyalgia. (Tr. 570).

The Commissioner argues that the failure to identify fibromyalgia as a medically determinable impairment was harmless because plaintiff has not identified any additional limitations arising from that condition. However, it is clear that the ALJ discounted plaintiff's complaints of pain in part because she thought that the record did not support her claim of fibromyalgia. The ALJ stated, "[T]he claimant's allegations of significant pain are not related to

a medically determinable impairment." (Tr. 15).

The ALJ's assessment of plaintiff's mental and physical RFC was erroneous, and those errors also affected the determination of plaintiff's credibility. Therefore, this case must be remanded to the Commissioner for rehearing. In view of that conclusion, the Court will forego a discussion of plaintiff's other points.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Merrill was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 18) is granted.

The Commissioner's final decision denying Ronda J. Merrill's application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE: 3/1/2017

         *s/J. Phil Gilbert*
         **J. PHIL GILBERT**
         **U.S. DISTRICT JUDGE**